LIFE SAVINGS AND LOAN ASSOCIATION OF AMERICA, Plaintiff-Appellee and Cross-Appellant, v. PALOS BANK AND TRUST COMPANY, Defendant-Appellant and Cross-Appellee (National Republic Bank of Chicago, Defendant).

First District (1st Division)   No. 85—2458

Opinion filed May 4, 1987.—Rehearing denied June 8, 1987.

James P. Chapman & Associates, Ltd., of Chicago (James P. Chapman and Kathleen Hogan Morrison, of counsel), for appellant.

Hanson & Shire, P.C., of Chicago (Paul H. Strecker and Richard K. Shire, of counsel), for appellee.

JUSTICE BUCKLEY delivered the opinion of the court:

This contract action arises from the alleged breach of a loan participation agreement. O'Hare International Bank (O'Hare) and Life Savings and Loan (Life) were the original parties to the loan participation agreement. Under the agreement, O'Hare and Life each had a half interest in a mortgage loan issued to Thomas Gimino (Gimino), who operated Josef's Restaurant on the property that was the collateral for the loan.

According to the terms of the agreement, O'Hare was the "lead bank." As the lead bank, it would receive 100% of the principal and interest payments from Gimino and then remit 50% of those payments to Life Savings. The agreement also provided that the lead bank would not assign its participation "without prior notification" to Life Savings.

In March 1977, Gimino defaulted on his mortgage loan. On April 15, 1977, O'Hare filed a mortgage foreclosure suit. Subsequently, O'Hare obtained a decree of foreclosure which stated that a balance was due in the sum of $352,291.63; the decree set a foreclosure sale date of November 15, 1977.

To stave off the scheduled foreclosure sale, Anthony V. Crissie (Crissie), an investor in Josef's Restaurant, proposed a deal. The terms of the deal were as follows: (1) Palos Bank and Trust (Palos) would buy out O'Hare's half interest in the Gimino mortgage loan; (2) O'Hare would assign its rights in the foreclosure decree to Palos; (3) on an interim basis, Palos would assume the position of lead bank as O'Hare's assignee of the participation agreement; (4) Life would defer payment on its half of the mortgage loan and the foreclosure sale would be postponed; (5) Palos would subsequently assign its half interest in the loan, its rights in the foreclosure decree, and its position as lead bank to National Republic Bank. Crissie averred in an affidavit, that on November 14, 1977, he discussed the terms of the proposed agreement with Life's president, Dante Dell' Armi, who consented to its terms.

In the following months, the terms of Crissie's proposal were carried out. On November 15, 1977, O'Hare assigned the participation agreement, its interest in the Gimino mortgage loan, and its rights under the foreclosure decree to Palos. Life agreed in writing to O'Hare's assignment of the participation agreement. As O'Hare's assignee, Palos became lead bank.

Shortly thereafter, Palos assigned its rights under the foreclosure decree, its interests in the loan, and the participation agreement to National Republic Bank (National). On March 1, 1978, National purchased the Gimino real estate at the sheriff's foreclosure sale. Several months later it sold the property to Crissie for $383,613.97. National allegedly gave none of these proceeds to Life.

Life filed a multiple-count complaint against Palos and National. Count I, which is the subject of the present appeal, alleges that Palos, as lead bank, breached the participation agreement when it failed to give Life notice of its assignment to National.

After conducting discovery, Life moved for summary judgment on count I of its complaint. Life averred in its affidavits that its board of directors, loan committee, and secretary-treasurer never "received any notification, written or oral, from Palos Bank, or any party purporting to act on behalf of Palos Bank, that Palos Bank intended to assign its interest *** to National Republic."

In response, Palos presented several affidavits from Anthony

Crissie. Crissie averred that he had advised the president of Life of the proposed deal and he agreed to its terms. His affidavits were stricken and Life's motion for summary judgment was granted. The court entered judgment of $151,613.87, which represented the principal amount of the note, and later entered judgment in the further amount of $44,725.04, which represented 6% interest on the principal. It denied Life's request for attorney fees.

Palos and Life both appeal. Palos appeals the orders entering summary judgment. Life appeals the interest awarded and the court's denial of attorney fees.

## I

■■■ We first consider whether entry of summary judgment in favor of Life was proper in this case. Summary judgment should be entered only if the pleadings, depositions, admissions, and affidavits on file show that no genuine issue of fact exists and the moving party is entitled to judgment as a matter of law. (*Beals v. Huffman* (1986), 146 Ill. App. 3d 30, 36, 496 N.E.2d 281, 286.) The court must strictly construe the evidence against the moving party and liberally in favor of the nonmoving party. (*Purtill v. Hess* (1986), 111 Ill. 2d 229, 240, 489 N.E.2d 867, 871.) Since the party opposing the motion has the right to a jury trial if there is a genuine issue of fact, the motion should be granted only when the right is clear and free from doubt. (*Beverly Bank v. Alsip Bank* (1982), 106 Ill. App. 3d 1012, 1016, 436 N.E.2d 598, 603.) With these general rules in mind, we consider the merits of Palos' arguments.

■■■ It is Palos' position that the court erroneously struck Crissie's affidavit of July 22, 1982. According to Palos, this affidavit was sufficient to raise a material issue of fact with respect to notice. The sufficiency of an affidavit offered in support of or in opposition to a motion for summary judgment is governed by Supreme Court Rule 191. That rule provides in pertinent part:

"Affidavits in support of or in opposition to a motion for summary judgment *** shall be made on the personal knowledge of the affiants; shall set forth with particularity the facts upon which the claim, counterclaim, or defense is based; shall have attached thereto sworn or certified copies of all papers upon which the affiant relies; shall not consist of conclusions but of facts admissible in evidence; and shall affirmatively show that the affiant, if sworn as a witness, can testify competently thereto." 87 Ill. 2d R. 191(a).

The trial court struck Crissie's affidavit without any explanation

on the record before us. Apparently, the trial court accepted Life's argument that the affidavit should be stricken because it does not state with particularity what legal relationship Crissie had with Palos or the underlying participation agreement that is at issue.

Construing Crissie's affidavit liberally, it states he is an interested third-party who was integrally involved in the deal to refinance the Gimino mortgage loan. In addition, his affidavit states that he met with Life's president, Dante Dell' Armi, on February 14, 1977. At this meeting, he purportedly advised Dell' Armi of his proposed deal to refinance the loan. According to Crissie's affidavit, Dell' Armi agreed to its terms including the assignment of the participation agreement from O'Hare to Palos and then from Palos to National. His affidavit does not state, however, what relationship, if any, he had with Palos, or his involvement with the participation agreement. In spite of these deficiencies, Palos insists that Crissie's affidavit is sufficient to raise a material issue of fact with respect to the notice requirement in the participation agreement.

Palos argues that notice can come from any source. This argument is inconsistent with the express terms of the participation agreement. It very clearly states that, "[w]ithout prior notification, we [the lead bank] will not *** assign our participation." The phrase "without prior notification" modifies the word "we" immediately following it. Reading this language together, notice must come from an agent of the lead bank, Palos. Since Crissie did not state that he was an agent of Palos, his conversation with Dell' Armi was irrelevant to the issue of notice and therefore inadmissible. Thus, the trial court properly struck Crissie's affidavit because it must contain facts admissible at trial to be sufficient under Supreme Court Rule 191(a) (87 Ill. 2d R. 191(a)).

In the alternative, Palos argues that the deposition testimony of Palos' attorney, Warren Swanson, demonstrates a material issue of fact with respect to notice. According to Palos, Swanson testified that he notified Life that "Palos Bank was an interim financier only," giving rise to the inference that Palos intended to assign its interest in the participation agreement. We have reviewed the portion of Swanson's deposition transcript contained in the record, and we find no testimony that shows Swanson notified Life of its position as an "interim financier."

In sum, the record before us does not show any material issue of fact concerning notice. Crissie's affidavit was properly stricken, and Swanson's testimony does not address the issue of notice.

## II

Palos next contends that there was a material issue of fact concerning a novation between Life, National, and itself. According to Palos, Dell' Armi, on behalf of Life, promised to accept National in place of Palos, as lead bank, and therefore a novation arose. This argument assumes that there was consideration for Dell' Armi's purported promise.

A novation requires contractual consideration. (See *Faith v. Martoccio* (1974), 21 Ill. App. 3d 999, 1004, 316 N.E.2d 164, 168.) When money is due, a mere promise to forebear its collection to some future date upon consideration of payment of part of the amount is not enforceable. (*Dennis v. Walters* (1905), 123 Ill. App. 93, 94.) Assuming that Dell' Armi promised to forego collection on the Gimino loan in lieu of future payments from National, this promise was gratuitous and not enforceable. Thus, there was no material issue of fact concerning a novation among the parties.

## III

Next, Palos claims that there is a material issue of fact as to whether there was a waiver or estoppel sufficient to preclude summary judgment. Both the waiver and estoppel arguments are based on the fact that Life accepted five loan repayment checks drawn on National Republic Bank. According to Palos, acceptance of these checks showed that Life waived any rights that it may have had against it. Furthermore, Palos contends that Life should be estopped from complaining that Palos assigned its position as lead bank because Life "accepted the benefits of the substitution."

Palos concedes that to have an implied waiver of a legal right there must be a "clear, unequivocal and decisive act." (*Kane v. American National Bank & Trust Co.* (1974), 21 Ill. App. 3d 1046, 1052, 316 N.E.2d 177, 182.) In the instant case, Life merely accepted checks drawn on National Republic Bank with one of the checks carrying the notation "Crissie participation." Neither the fact that the checks were drawn on National Republic Bank nor the notation would put Life on notice that acceptance would constitute an implied waiver. Acceptance of the checks, even with the notation, does not show a purposeful waiver by Life.

For estoppel to apply, there must be a knowing acceptance of benefits. (See *Cashman v. Shinn* (1982), 109 Ill. App. 3d 1112, 1117, 441 N.E.2d 940, 943.) As discussed above, the checks did not put Life on notice and certainly did not show a knowing acceptance of benefits from National in place of Palos. Thus, Life's acceptance

of these checks does not demonstrate a material issue of fact sufficient to preclude summary judgment.

## IV

■■ Finally, Palos argues that the court's judgment of $151,613.87 was excessive by approximately $20,000. Palos does not present any sworn affidavits in support of its claim that the damages awarded were excessive. On the other hand, Life argues that the court correctly computed the damages award relying on the sworn affidavit of its assistant secretary, Patricia Karch. It is settled law that when a party files an affidavit in support of a motion for summary judgment, and "such well alleged facts are not contradicted by counteraffidavit, [that] they must be taken as true, notwithstanding the existence of contrary averments in the adverse party's pleadings." (*Fooden v. Board of Governors* (1971), 48 Ill. 2d 580, 587, 272 N.E.2d 497, 500-01, *cert. denied* (1972), 408 U.S. 943, 33 L. Ed. 2d 766, 92 S. Ct. 2847; see also *Rivera v. Mahogony Corp.* (1986), 145 Ill. App. 3d 213, 214, 494 N.E.2d 660, 661.) Palos has not presented any counteraffidavits to contradict Life's affidavits concerning damages. Accordingly, Palos has admitted the facts alleged in Life's affidavits. Therefore, the trial court correctly computed the damages award.

## V

■■ Life cross-appeals contending that the trial court erred when it computed interest at a 6% rate rather than a 12% rate. According to Life, the 12% rate specified in the mortgage loan controls, not the 6% interest rate specified in the judgment of foreclosure. This argument ignores the fact that Life expressly agreed that a 6% rate would control.

When O'Hare assigned its interests to Palos, Life agreed to the assignment in writing. In this assignment Life agreed that:

> "The balance due on the loan including interest at 12% per annum to November 15, 1977 is $354,690.26 to which Life is entitled to one half, *although Life acknowledges and agrees that under the Judgment of Foreclosure on the mortgage, the loan interest accrued at only 6% per annum from September 23, 1977 ***.*" (Emphasis added.)

Based on this agreement it is clear that the interest accrued at 6% rate per annum. The trial court used the correct interest rate in computing the interest owed to Life.

## VI

■ Life also claims that the trial court erred when it refused to award attorney fees. Life contends that it is entitled to fees because of the following provision in the original promissory note which states:

"To further secure payment of this note, the undersigned [Thomas Gimino] hereby authorize[s], irrevocably, any attorney *** [to] confess a judgment *** for the unpaid balance of principal and interest *** together with costs and reasonable attorneys' fees ***."

This provision does not support Life's position. It is only a guaranty by Gimino that in the case of a default, he would pay reasonable attorney fees. Palos never assumed Gimino's obligations under the note. Indeed, the note is not even the subject of the present litigation. This provision has no applicability to this case and the trial court correctly denied Life's request for attorney fees.

To summarize, the trial court's entry of summary judgment for Life was proper. The court correctly computed the interest rate at 6% per annum and correctly denied Life's request for attorney fees.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

QUINLAN, P.J., and CAMPBELL, J., concur.