53 F.3d 333
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
 SEARS ROEBUCK & CO., Plaintiff-Appellee,
v.
ALLIED COMMERCIAL CORPORATION, and its successor by merger,
Healthcare Receivables Management, Inc.,
Defendant/Third Party Plaintiff-Appellant,
v.
Benton CARROLL, Jr., and Vera Mae Carroll, individually, and
as independent executrix of the Estate of Benton
Carroll, Sr., Third Party Defendants-Appellees.
 Nos. 94-1016, 94-1172.
 United States Court of Appeals, Seventh Circuit.
 Argued Sept. 14, 1994.
Decided April 25, 1995.
 
 Before LAY,* EASTERBROOK and RIPPLE, Circuit Judges.
 
 ORDER
 
 1
 * BACKGROUND
 
 A.
 
 2
 In August 1988, Sears, Roebuck & Co., a New York corporation whose principal place of business is in Illinois, and Allied Commercial Corp., a Texas corporation whose principal place of business also is in Texas, signed a contract. The terms required Allied to act as collection agent for Sears. The parties amended the contract in February 1989. The amended contract stipulated that Allied was not an agent of Sears, but was simply an independent contractor. Allied agreed to defend Sears against, and to indemnify Sears for, any "damage or loss resulting ... from any actual or alleged collection activity by [Allied]." The contract also required Allied to procure $1,000,000 in general liability insurance, to maintain Sears as an additional insured, and to send Sears a copy of the insurance certificate "immediately upon the issuance of the policy or the signing of this agreement." Allied never purchased the insurance.
 
 
 3
 In the course of their collection activities, Allied's employees allegedly harassed an elderly man, Benton Carroll, Sr., over a debt for $272.55. Mr. Carroll died of a heart attack, and his family sued Allied and Sears in the state courts of Texas. In their initial complaint, the Carroll family claimed that Allied's aggressive collection practices were the proximate cause of the death of Mr. Carroll. They also alleged that Sears was derivatively liable because of those practices of Allied. Finally, the complaint alleged that Sears was independently liable because of its negligent hiring and supervision of Allied. Initially, Allied defended Sears, but it later withdrew from Sears' defense. It was at that time that Sears discovered that Allied had not purchased the insurance required by the contract. On October 22, 1992, shortly before they settled with Allied, the Carrolls filed an amended complaint in which they alleged solely that Sears was independently liable to them because it had negligently hired and supervised Allied. On November 16, 1992, Allied settled with the Carrolls for $310,000. Part of the settlement agreement required the Carrolls to indemnify Allied against Sears. On January 7, 1993, Sears later settled with the Carrolls for approximately $250,000 and agreed to indemnify the Carrolls against Allied. Each of these transactions will be set forth in more detail in the following discussion.
 
 
 4
 Sears then brought this action against Allied for breach of contract. It premised jurisdiction on diversity of citizenship. It sought to recover the amounts that it had expended in the course of defending and settling the Carroll lawsuit. Allied, invoking the court's supplemental jurisdiction under 28 U.S.C. Sec. 1367, then filed a third-party complaint seeking indemnity from the Carrolls. In due course, Sears moved for summary judgment on the ground that its interpretation of the contract entitled it to judgment as a matter of law. Allied cross-filed for summary judgment, and argued that Sears had waived its insurance claims, was not entitled to indemnification for Sears' own negligence, and was not entitled to fees. Allied also filed for summary judgment on its third-party complaint, seeking judgment on the ground of indemnity against the Carrolls in the event the court should grant Sears' motion. We shall set forth, in the order in which it issued its opinions, the analysis of the district court in some detail.
 
 B.
 
 5
 1. The Cross-Motions for Summary Judgment on Sears' Claim for Breach of the Collection Services Agreement
 
 
 6
 On September 23, 1993, the district court denied Allied's motion for summary judgment against Sears. It granted Sears' motion for summary judgment against Allied. The court addressed separately the parties' contentions with respect to each of the contractual provisions at issue.
 
 
 7
 The court turned first to the insurance provision. There was no question that the contract between the parties required that Allied purchase general liability insurance and arrange for Sears to be named as an additional insured. The district court determined that, contrary to the assertion of Allied, Sears had not waived this provision. In this regard, the court noted that, unlike the situation in the Illinois cases relied upon by Allied, the contract at issue did not require that a copy of the policy be delivered to Sears as a condition precedent to the commencement of work. Nor was there the sort of clear, unequivocal, and decisive act required by Illinois law to find an implied waiver. The court did not discuss the scope of coverage that the insurance policy was intended to afford Sears.
 
 
 8
 The district court then turned to the defense provision. This provision, concluded the court, required that Allied defend Sears. The court noted that Allied's breach of this provision was not contested. The court deferred the issue of damages.
 
 
 9
 Turning to the indemnification provision, the court addressed the contention of Allied that it was not required to indemnify Sears for actions that could be characterized as Sears' own negligence. Allied had argued that the Carroll family's original complaint in the Texas lawsuit alleged that Sears had been negligent in selecting Allied as its collection agent and in failing to supervise Allied in the performance of its collection duties under the contract.[2] The district court noted that Sears had settled the state lawsuit with the Carroll family prior to trial. Therefore, it continued, there was no judicial finding that Sears had been independently negligent. The district court held that a determination on summary judgment that a settlement was based solely on the indemnitee's direct negligence was possible only when the pleadings and the evidence in the underlying litigation (i.e., the Texas lawsuit) precluded any finding that the settlement was based on derivative liability. In short, for Allied to prevail, the pleadings and the evidence had to show that the conduct of Sears could be characterized only as direct negligence.[3] Because the original Texas complaint and the settlement agreement did not show that Sears was only directly, and not derivatively, negligent, Allied was not entitled to summary judgment.
 
 
 10
 The district court then turned to Sears' motion for summary judgment. To prevail on this motion, Sears had to demonstrate that its settlement with the Carrolls was based only on its derivative, not direct, negligence. In replying to this motion, Allied attempted to rely on the original complaint filed in the Texas action. The district court ruled, however, that Allied could not rely on this pleading. In the district court's view, Allied's attempt to rely on this document did not comport with the requirements of Rule 56(e), as explained by the Supreme Court in Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986), that a party opposing summary judgment may not rest on the pleadings. The complaint was not the sort of documentary reference, held the court, that, standing alone, could create a genuine issue of triable fact regarding the direct negligence of Sears. As noted earlier, in deciding Allied's motion for summary judgment, the court had relied on the allegations in this same complaint from the Texas litigation. On Sears' motion for summary judgment, however, the court did not permit Allied to rely on the same pleading. Because the court would not allow Allied to rely on the complaint in the Texas litigation to establish that there was an issue of fact as to whether the Sears-Carroll settlement was based in part on allegations of Sears' direct negligence, it ruled that Allied had failed to raise a genuine issue of triable fact with respect to the direct negligence of Sears. Therefore, the district court held that Sears was entitled to summary judgment on its claim that it was owed indemnification from Allied. In the absence of rebuttal from Allied, Sears had established that its settlement with the Carrolls was based on its derivative, not direct, negligence.
 
 
 11
 In sum, the district court, in this first phase of its adjudication of the case, determined that, on the documents before it on summary judgment, Sears had established that Allied had breached its contractual obligation to Sears by failing to provide the insurance coverage required by the contract. Sears had also established that it had a right to indemnification from Allied for breach of the collection services agreement. The court then deferred ruling on the Allied's third-party complaint against the Carrolls.
 
 
 12
 2. The Third-Party Complaint: Allied Seeks Indemnification from the Carrolls
 
 
 13
 On November 24, 1993, the district court turned to the settlement agreement between the Carrolls and Allied. This agreement was the basis of the third-party complaint of Allied against the Carrolls. As in the earlier stage of adjudication, the district court had before it cross-motions for summary judgment.
 
 
 14
 The Allied-Carroll settlement agreement had terminated the Texas litigation between these parties. In that litigation, the Carroll family had alleged that Allied's collection tactics had caused Benton Carroll, Sr. to have a fatal heart attack. The complaint alleged that Allied persisted in its tactics even after it had been advised of the poor health of Mr. Carroll. The complaint named Sears as a co-defendant.[4] It alleged that Allied was acting as the agent of Sears and that, therefore, Sears was vicariously liable for the actions of Allied. The complaint also alleged that Sears had been negligent in its selection of Allied as its collection agent and in its supervision of Allied. As we have noted earlier, Allied initially assumed the defense of Sears in the state litigation but later withdrew.
 
 
 15
 The November 16, 1992 settlement agreement between Allied and the Carroll family provided that Allied would pay the Carrolls $310,000. Under its terms, the Carrolls also agreed to indemnify Allied. The terms of this indemnification were set forth in a "Mediated Settlement Agreement" in which the Carrolls agreed to indemnify
 
 
 16
 the Defendants, Allied Commercial Corporation (and its successor by merger, Healthcare Receivables, Inc.) and Raymond Blair, an individual, against any possible recovery in this Cause or any other Cause by Sears over and against any such Defendant as a result of any settlement or judgment rendered in this Cause.
 
 
 17
 In a subsequent release, dated December 10, 1992, the Carrolls stated as follows:
 
 
 18
 [The Carrolls] agree to indemnify and hold harmless ... Allied Commercial Corporation ... against any and all further claims and damages, and costs arising out of the death of Benton Carroll, Sr. from said incident....
 
 
 19
 On January 7, 1993, Sears settled with the Carrolls for $253,004.90. The Sears-Carroll "Release and Settlement Agreement" obligated Sears
 
 
 20
 to indemnify [the Carrolls] for any liability they may incur or suffer by virtue of an Indemnity Agreement contained in the [Carrolls'] Mediated Settlement Agreement with Defendant Allied/Blair.... If Defendants ALLIED COMMERCIAL CORPORATION and/or Defendant RAY BLAIR shall recover against [the Carrolls] based on the indemnity clause in the Mediated Settlement Agreement, then Defendant SEARS shall indemnify [the Carrolls] to the extent of such recovery by Defendants Allied Commercial or Blair.
 
 
 21
 The district court first addressed the Carrolls' argument that the indemnity agreements were void and unenforceable on the ground that they purport to relieve Allied from its own negligence. The Carrolls argued, and the court agreed, that a contract cannot indemnify a party for its own negligence unless the document specifically provides for such indemnification in clear, unequivocal terms. See Davis v. Marathon Oil Co., 356 N.E.2d 93, 101 (Ill.1976) (holding that parties must express their intent in "clear, unequivocal terms").[5] The court found no such express or unequivocal undertaking in the mediated settlement or in the release. The court further determined that the pleadings in the Texas state court action established that Allied was charged with direct negligence. Accordingly, the court concluded that Allied could not seek indemnity from the Carroll family for the damages Allied owed Sears because the source of Allied's liability was Allied's own negligence.
 
 
 22
 In reaching this conclusion, the court addressed Allied's argument that Allied was not really seeking indemnity for its own negligence, but for its breach of contract to Sears. Construing the Allied-Carroll indemnity agreement against Allied because it was the drafter and the indemnitee, the court determined that, even if it were to accept the characterization offered by Allied, recovery would not be possible. It noted that the indemnity agreement covered "possible recovery ... as a result of any settlement or judgment rendered in this cause." In the district court's view, "this cause" referred to the lawsuit brought by the Carrolls in Texas and not to any breach of contract action brought by Sears.
 
 
 23
 The district court then turned to a matter that it had deferred in its first ruling--the amount of damages that Allied owed to Sears. It determined that Sears had paid $253,004.90 to the Carrolls in settlement of the litigation. When fees and expenses were added, the total sum was $280,067.24. The district court therefore rendered judgment for Sears against Allied in that amount.
 
 II
 DISCUSSION
 
 24
 We turn first to the district court's treatment of the alleged breach of the Sears-Allied contract. The district court denied Allied's motion for summary judgment because Allied had not established that the settlement between the Carrolls and Sears was based solely on the direct, as opposed to the derivative, negligence of Sears. On the other hand, the court granted Sears' motion for summary judgment because, in its view, Allied's reliance on the settlement releases and the pleadings in the Texas suit was an inadequate response to Sears' assertion that the Sears-Carroll settlement was based solely on claims of its derivative negligence for the conduct of Allied.
 
 A.
 
 25
 At the outset, we must note that the district court decided this motion under a fundamental misapprehension about the status of the pleadings in the Texas action. The district court's understanding of the Sears-Carroll settlement was based solely on the original Texas complaint submitted by the Carrolls. The record makes clear, however, that, prior to any settlement, the Carrolls had filed an amended complaint. It is not clear from the record whether, according to Texas procedure, this amended complaint supplanted or supplemented the earlier version. It is clear, however, that these two versions presented quite different allegations against Sears. The earlier version had contained both direct and derivative claims against Sears; the amended complaint set forth only claims of direct negligence.
 
 
 26
 It appears that the parties were well aware of the existence of the amended complaint. Indeed, on June 25, 1993, Allied referred to this document in its reply memorandum in support of its motion to transfer venue. Nevertheless, the parties persisted in litigating the motion for summary judgment solely on the basis of the earlier complaint. Indeed, the record clearly reflects that, in the litigation of the motions for summary judgment, the parties relied entirely upon the earlier complaint. The district court's attention apparently was never invited to this matter by either party. Because the parties did not advise the district court of the amendment of the complaint, but chose instead to litigate their motions for summary judgment on the basis of the superseded complaint, we shall require that they continue to litigate their case before this court on the same basis and be deemed to have waived any advantage that the amended complaint would have given them. See Citizens Ins. Co. v. Barton, 39 F.3d 826, 828 (7th Cir.1994) ("Arguments not raised in the district court are waived on appeal."); Fries v. Chicago & Northwestern Transp. Co., 909 F.2d 1092, 1097 (7th Cir.1990) (same); Heller v. Equitable Life Assurance Soc'y, 833 F.2d 1253, 1261 (7th Cir.1987) (same and collecting cases); Lektro-Vend Corp. v. Vendo Co., 545 F.2d 1050, 1059 (7th Cir.1976) (same), rev'd on other grounds, 433 U.S. 623 (1977). We shall leave to the district court on remand the task of determining whether any additional sanction ought to be imposed on the parties or on counsel for this egregious lack of candor.
 
 B.
 
 27
 The fundamental standards governing the litigation of a motion for summary judgment are well established. We set them out at some length in Doe v. R.R. Donnelley & Sons Co., 42 F.3d 439 (7th Cir.1994), and repeat them here only because their application is at the heart of this case:
 
 
 28
 Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and the admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." As the district court explicitly noted, in ruling on a motion for summary judgment, the judge's role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. The burden rests squarely with the party moving for summary judgment to demonstrate that there is an absence of evidence to support the nonmoving party's case. If there is doubt about the existence of a material fact, then those doubts should be resolved in favor of the nonmoving party and summary judgment ought to be denied. On the other hand, summary judgment must be entered against a party who fails to make showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In this respect, the nonmoving party cannot rest on its pleadings, but must demonstrate that there is admissible evidence that will support its position. A "metaphysical doubt" with respect to the existence of a genuine issue of triable fact is not enough to preclude summary judgment.
 
 
 29
 Donnelley, 42 F.3d at 443 (quotations and internal citations omitted); see also Hedberg v. Indiana Bell Tel. Co., 47 F.3d 928, 930-31 (7th Cir.1995); Shintom Am., Inc. v. Car Tels., Inc., 45 F.3d 1107, 1109 (7th Cir.1995).
 
 
 30
 The district court granted Sears' motion for summary judgment. This decision established that Sears' liability to the Carrolls was derivative, not direct, and therefore within the coverage of the Sears-Allied indemnification agreement. The district court's grant of summary judgment was premised on its conclusion that Allied had failed to come forward with evidence that created a genuine issue of triable fact with respect to the basis of Sears' liability to the Carrolls. This conclusion was grounded in the court's belief that Allied could not rely on the pleadings in the Texas litigation to oppose Sears' motion. In the district court's view, Allied was precluded from relying on the pleadings in the Texas case because of the prohibition contained in Rule 56(e) of the Federal Rules of Civil Procedure, as explained by the Supreme Court in Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986), that a party opposing summary judgment may not rest on the pleadings.
 
 
 31
 We believe that the district court's interpretation of Celotex 's prohibition against reliance on the pleadings is far too rigid. It lifts the language of the case out of the context in which it was written and is unfaithful to the plain language of Rule 56(e). The party resisting summary judgment cannot rely on its own pleadings in the current action. See Shintom Am., 45 F.3d at 1109 (noting that a party opposing summary judgment may not rest on his pleadings); Donnelley, 42 F.2d at 443 (stating that the "nonmoving party cannot rest on its pleadings"); cf. Fed.R.Civ.P. 56, Advisory Comm.Notes, 1963 amend. (noting that language in Rule 56(e) was added to counter various Third Circuit cases that had allowed a party to resist summary judgment simply on the basis of the pleadings it had filed in that lawsuit). Here, Allied did not attempt to rely on its pleadings in the present action. It attempted to rely on the pleadings filed by the Carrolls in the Texas litigation in order to demonstrate that the accusations against Sears were at least in part based on its direct negligence. A party opposing summary judgment may submit any documentary evidence that would be admissible at trial. See 6 James W. Moore, et al., Moore's Federal Practice p 56.11[1.--8], at 56-105 (1994); 10A Charles A. Wright, et al., Federal Practice & Procedure Sec. 2721 & n. 5, at 40, Sec. 2724 (1983); see also Edward Brunet, Summary Judgment Materials, 147 F.R.D. 647, 648 & n. 9 (1993). Thus, courts have allowed, among other things, stipulations, certified court transcripts, administrative records, exhibits and other papers identified by affidavit, orders made at pretrial hearings, depositions, affidavits of expert witnesses, transcripts from other proceedings, phonograph records, motion pictures, computer printouts, medical records, and a patented perfume bottle model. See Moore, et al., p56.11[1.--8] nn. 1, 3-7; Wright, et al., Sec. 2724 nn. 1-10 & Supp. Sec. 2722 nn. 24.1, 37.1, Sec. 2724 n. 1.
 
 
 32
 Had the district court allowed Allied to rely on the pleadings from the Texas litigation, Allied would have been able to establish that there was a genuine issue of triable fact with respect to the basis of Sears' liability to the Carrolls and therefore with respect to the settlement between Sears and the Carrolls. Accordingly, we must conclude that the district court committed reversible error in granting summary judgment to Sears with respect to its rights under the indemnification agreement.
 
 
 33
 Because there is a genuine issue of triable fact with respect to whether all of the allegations against Sears are covered by settlement agreement, we believe that it is also necessary for the district court to revisit the issue of the scope of the insurance agreement.[6] In its order, the court did not confront squarely the issue of whether the insurance agreement was intended to cover the direct, as well as the derivative, liability of Sears.
 
 C.
 
 34
 We turn now to the district court's second order. In this order, it dealt with the Allied-Carroll agreement. In the district court's view, the Carrolls were entitled to summary judgment on the ground that the indemnification agreement could not be construed to cover the direct negligence of Allied because no such undertaking was expressly stated. We agree with the district court on this point. However, we do not believe that the plain wording of the indemnification agreement can necessarily be construed as a matter of law to exclude any liability that Allied may eventually incur for its failure to procure insurance for Sears. In our view, the language of the settlement, especially when read in context, makes the intent of the parties less than clear. Two matters are of particular concern. First, we note that the "Release and Settlement Agreement" between the Carrolls and Sears refers in paragraph 4 to the existence of pending "cross actions" between Sears and Allied in the Texas litigation. These "cross-actions" may be what Allied and the Carrolls were contemplating when the Carrolls agreed, in the contractual language of the Mediated Settlement Agreement noted earlier, to indemnify Allied "against any possible recovery [by Sears, against Allied] in this Cause." There remains the additional question concerning what potential liabilities Allied and the Carrolls intended to cover by the phrase "or any other Cause by Sears" which they included in that same indemnity agreement. Moreover, if the Allied-Carroll indemnification agreement was intended to refer only to Allied's own negligence, the agreement was indeed illusory because, as we just have noted, such negligence clearly cannot be covered in the absence of explicit language that brings it within the scope of the agreement. Under these circumstances, it seems indeed difficult to give meaningful content to the Allied-Carroll settlement agreement unless it covers Allied's liability for breaching the insurance agreement in the Sears-Allied contract.
 
 
 35
 The district court's reconsideration of the Sears-Allied agreement may make it unnecessary for the district court to revisit the Allied-Carroll agreement. However, if the court's determinations with respect to the Sears-Allied agreement establish some liability on the part of Allied, we believe that the district court ought to revisit its initial interpretation of the Allied-Carroll indemnity agreement. Although the district court indeed may have discerned correctly the intent of the parties, we cannot say that the language of the agreement leads inexorably to that result.[7]
 
 
 36
 For the foregoing reasons, the judgment of the district court is reversed and the case is remanded for proceedings consistent with this order.
 
 REVERSED and REMANDED
 
 37
 EASTERBROOK, Circuit Judge, concurring.
 
 
 38
 The district judge's decision is colored by his belief that the chain of indemnities, if enforced, would enrich Allied at the Carrolls' expense. Yet nothing that happens in this case will take a penny away from the Carrolls. If they must indemnify Allied, then Allied must indemnify Sears, which must indemnify the Carrolls. If all of the indemnities are enforced as written, the Carrolls keep what they have, while Sears and Allied bear their own outlays. So much of the district judge's reaction to this case flowed from his misunderstanding of the indemnities' aggregate effects that a fresh look is in order.
 
 
 39
 The district judge also misunderstood the role that a theory of direct liability may play in this litigation. Indeed, I wonder whether the parties have themselves grasped all of the ramifications. Despite Sears's protestations, the amended complaint in Texas pleads a theory of direct liability--from the Carrolls' perspective. Is it direct liability from Allied's perspective? Suppose this were a simple master-servant case without an indemnity agreement. Employer hires Agent, a convicted rapist, and makes him manager of Employer's hotel. Employer negligently fails to check Agent's background. After a week at the hotel, Agent uses a pass key, lets himself into Guest's room, and rapes her. Employer may or may not be vicariously liable for Agent's intentional tort, but Employer is directly liable to Guest for its negligence in not verifying Agent's trustworthiness. Suppose Employer sues Agent, seeking indemnity for the payment Employer made to Guest. Could Agent defend by saying: "I am liable to you only if you were held vicariously liable for my torts; but you were not held vicariously liable (I was acting outside the scope of my employment). You were held directly liable to Guest for your negligence in hiring me. Therefore I don't have to indemnify you." Allied's argument--that Sears was directly liable for engaging a known malefactor (which is to say, Allied!)--is similar. If it is a good defense for Agent, then Allied's parallel argument succeeds. But is it a good argument for Agent in Texas? The parties have not explored this question.
 
 
 40
 Whether a tort is "direct" depends on whose perspective we use. The standard cases of direct negligence for which indemnity is presumptively unavailable are those in which the employer sets the ground rules or supplies a defective product. Employer tells Agent to spray the crops with Fungicide X, as a result of which Farm Hand dies. The employer's choice of Fungicide X (rather than Y or Z) is to blame. Here, even a contractual promise by Agent to indemnify Employer probably would not be enforced. That is the principle Allied appeals to. But it is manifestly inapplicable to this case, for Allied's misconduct was a sine qua non of Sears's liability to the Carrolls. In most states' law of torts, the primary or active tortfeasor must indemnify the secondary or passive tortfeasor, even in cases of joint liability. E.g., Prosser & Keeton on Torts Sec. 51 (5th ed. 1984). That would call for indemnity by Allied quite apart from the contract. Allied's written promise to indemnify fortifies that obligation. Unless some principle of Texas law bars the way, Sears remains entitled to indemnity from Allied on the original contract--leaving only the chain of settlement indemnities to be sorted out.
 
 
 
 *
 The Honorable Donald P. Lay of the United States Court of Appeals for the Eighth Circuit is sitting by designation
 
 
 [2]
 As we shall discuss later in some detail, no party to this lawsuit apprised the district court, in the context of a summary judgment filing, of the existence of the Carrolls' amended Texas complaint
 
 
 [3]
 The district court relied upon Lohman v. Morris, 497 N.E.2d 143, 146 (Ill.App.Ct.1986) and MFA Mut. Ins. Co. v. Crowther, Inc. 458 N.E.2d. 71, 75 (Ill.App.Ct.1983)
 
 
 [4]
 The Carroll family also named the president of Allied as a party
 
 
 [5]
 The Sears-Allied contract provides that it will be construed under Illinois law. However, the Allied-Carroll agreement does not contain a choice-of-law provision. The fact that this contract was negotiated and executed in Texas, and involves Texas parties, suggests that Texas law would govern its interpretation. See U.S. Gypsum Co. v. Admiral Ins. Co., 643 N.E.2d 1226 (Ill.App.Ct.1994) (noting that Illinois applies "most significant contacts" test of Restatement (Second) to determine choice of law in contracts cases); see also Wildey v. Springs, 47 F.3d 1475, 1481-82 (7th Cir.1995) (holding that Illinois Supreme Court would apply "most significant contacts" test to determine choice of law in contract cases); Palmer v. Beverly Enters., 823 F.2d 1105, 1107 (7th Cir.1987) (same). The district court did not discuss whether Texas law should apply; on appeal, the parties agree that the Texas and Illinois authorities similarly require that a contract purporting to indemnify an indemnitee for its own language expressly state as much. Our review of the Texas authorities suggests that Texas considers its "express negligence doctrine" a more strict requirement than Illinois' clear and unequivocal test. See Ethyl Corp. v. Daniel Constr. Co., 725 S.W.2d 705, 708 (Tex.1987) ("[P]arties seeking to indemnify the indemnitee from the consequences of its own negligence must express that intent in specific terms.... We now reject the clear and unequivocal test in favor of the express negligence doctrine.")
 
 
 [6]
 After reviewing the Illinois authorities, however, we, like the district court, find Allied's waiver argument lacking in two respects. First, the "proof of insurance" clause in the Sears-Allied contract was not a condition precedent to performance. Thus, Allied's reliance upon Geier v. Hamer Enters., Inc., 589 N.E.2d 711 (Ill.App.Ct.1992) and Whalen v. K-Mart Corp., 519 N.E.2d 991 (Ill.App.Ct.1988), is misplaced. Second, Sears performed no affirmative act that indicated it was waiving the insurance provision. See Life Sav. & Loan Ass'n v. Palos Bank & Trust Co., 508 N.E.2d 262, 266 (Ill.App.Ct.1987)
 
 
 [7]
 To help guide the district court's inquiry on remand, we suggest that it first determine what portion, if any, of Sears' settlement with the Carrolls was intended to resolve the Carrolls' allegations of direct negligence against Sears and what portion, if any, was intended to resolve the Carrolls' allegations of derivative liability. It seems clear that Allied will be liable to Sears, under both the indemnification and insurance procurement provisions of the Sears-Allied contract, for any portion of Sears' settlement with the Carrolls that was based upon Sears' potential derivative liability. In this regard, we reiterate that Allied may not relitigate the question whether Sears has waived its rights under the insurance procurement clause. We have resolved that question in Sears' favor. To the extent the district court determines that all or part of Sears' settlement with the Carrolls reflected Sears' potential liability for direct negligence, the court must then inquire whether the indemnification or insurance procurement clauses in the Sears-Allied contract permit Sears to recover damages that resulted from its own negligence
 Next, to the extent the district court determines that Allied owes damages to Sears pursuant to the Sears-Allied contract, it must then inquire whether Allied may pass all or part of this liability through to the Carrolls pursuant to the Allied-Carroll agreement. Our decision precludes Allied from contending that the Allied-Carroll agreement permits Allied to seek indemnification for Allied's own negligence. However, Allied may question the extent to which the Allied-Carroll agreement permits Allied to seek indemnification for any damages it owes Sears under the Sears-Allied contract, including damages arising under the insurance procurement clause, for that portion of Sears' settlement with the Carrolls that resolved the Carrolls' direct negligence claim against Sears. Finally, it is clear that Allied breached its contractual duty to defend Sears in the Texas litigation. The district court already has determined the damages Sears suffered specifically as a result of this breach ($27,062.34). The parties are foreclosed from disputing this figure. On remand, the question remains whether the Allied-Carroll agreement obligates the Carrolls to indemnify Allied for this amount (i.e., whether the Allied-Carroll agreement covers Allied's contractual liability to Sears).